Carl A. Fick et al., Appellants, v. Bertha C. Burnham et al., Appellees.

Gen. No. 32,837.

334

Heard in the third division of this court for the first district at the June term, 1928. Opinion filed January 30, 1929.

BRYANT, MENEELY, IRRMANN & LEWE, for appellants.

FRANK T. MURRAY and ELMER M. LEESMAN, for appellees.

MR. JUSTICE WILSON delivered the opinion of the court.

The complainants, Carl A. Fick and Vivienne Fick, as owners and joint tenants of lot 20, and Horace L. Howard and Olga E. Howard, owners and joint tenants of lot 21, both in Betts' Second Addition to Lincolnwood, filed their bill of complaint charging that prior to the sale of any of the lots in the subdivision, an agreement was entered into by the owners of said

property establishing certain restrictions, which agreement was filed in the recorder's office of Cook county, Illinois.

The bill further charges that the agreement of said subdivision contained, among other restrictive covenants, a provision that no building should be erected on any lot except a private dwelling house to be occupied by one family only, together with barns, garages and other outbuildings. The agreement further contained a restrictive covenant to the effect that no residence should be constructed unless the lot should have a frontage of 65 feet or more, and then only one residence for each 65 feet, the frontage being that on Colfax Street.

The bill charges that one Bertha C. Burnham, a defendant to said bill, purchased lot 19 in Betts' Second Addition to Lincolnwood on November 23, 1926, subject to the agreement hereinbefore referred to. It is further charged that, notwithstanding said restrictions, said defendant has caused to be prepared plans and specifications and has commenced the erection of two residences upon said lot 19, in violation of the restrictions contained in the deed; charges that one Tyson, a party defendant, is, in fact, the true owner of said property and that the buildings are being constructed for his use and occupancy; charges further that the defendants have been advised of the objections of other property owners in said subdivision and asks that defendants be restrained or enjoined from building or erecting more than one residence on said lot.

The answer, in effect, denies the allegations of the bill and charges further that the defendant Tyson commenced the erection of an expensive and attractive brick residence for the benefit and use of himself and family; that the second structure is a two-story brick cottage, intended for the use of his chauffeur, and is

on the extreme end of his premises and about 35 feet back from the Ewing Avenue lot line. The answer further alleges that there are other lots in the subdivision containing more than one residence and that there has been a general practice of building more than one residence on lots without objection or protest on the part of the owners of other lots in said subdivision.

Upon a hearing upon the bill and answer, the chancellor found the issue in favor of the defendants and dismissed the bill for want of equity and it is from this decree that the appeal has been perfected to this court.

There appears to be very little, if any, dispute as to the material facts and most of these are contained in the stipulation agreed upon between the parties. Lots 20 and 21 owned by the complainants are a part of the subdivision known as Betts' Second Addition to Lincolnwood and face south on Colfax Street. Lot 19, being the lot in question, owned by the defendants, adjoins lot 20 on the east and also faces south on Colfax Street with its east side extending along Ewing Avenue. Lot 19 has a frontage of 70 feet on Colfax Street, extending along Ewing Avenue for a distance of 194.35 feet. Tyson purchased the lot in question and took title in the name of one B. C. Burnham, as a matter of convenience. On or about December 13, 1926, the defendant began the construction of two buildings on said lot, both facing upon Ewing Avenue and on or about December 22, 1926, permits were issued by the building commissioner of Evanston for the erection of said buildings. These notices were posted, as provided by ordinance, on that date on the tool shed of the contractor, located midway between Colfax Street and an alley in the rear of said lots. These permits provided for one 2-story brick veneer dwelling with garage attached, at 2801 Colfax Street and for another 2-story brick dwelling also at 2801 Colfax Street.

One of the complainants, Vivienne Fick, testified that she first learned that the vacant lot was to be improved during the latter part of December, 1926, or the first part of January, 1927; that she talked to the workmen and was told that the building in the rear was to be a garage with servants' quarters above. She testified further that after suit was started, the work was hurried on the building on the rear of lot 19, and practically stopped on the main residence. She testified further that she tried to locate B. C. Burnham, but could not find her name in either the Chicago or the Suburban Telephone Directory. It appears that B. C. Burnham was listed in a book known as Polk's Evanston & North Shore Directory. She also talked with the building commissioner, about the 5th of February, who, in turn, about that date, talked to Tyson concerning the restrictions. The bill was filed February 14, 1927. Tyson, the defendant, testified that prior to the beginning of the erection of said buildings, he consulted attorneys and examined other property in the subdivision and that there were two lots, known as 28 and 38, in the subdivision upon which were two residences, either built or under construction, and that this situation existed subsequent to the purchase of complainant's property and that said lots were corner lots. It appears from the evidence and from the plat in evidence that these lots are not in the block in which the lots of the complainants and the defendants are located. The fact that restrictive covenants in deeds to property in other subdivisions in the neighborhood have been violated does not concern the defendants in this action.

Lot 28 has a dwelling facing upon Colfax Street and the other dwelling on said lot faces upon Forestview Road. Lot 38 is approximately a block and a half away from the residence of the complainants and the dwelling upon the rear of said lot 38 faces upon Grant Street.

The dwelling erected by the defendant Tyson upon the front of lot 19 appears to have cost approximately $42,000, and the dwelling in the rear, referred to as a cottage with a basement, appears to have cost approximately $12,000. The garage is attached to the main dwelling located on the front of said lot and there appears to be a distance of approximately 65 feet between the two dwellings. The fact that the garage is attached to the main dwelling; that the so-called chauffeur's cottage with a basement, erected at a cost of approximately $12,000, is 65 feet from the residence on the front of the lot and that the application for a building permit was entitled, "dwelling," would indicate that this second structure was intended for use and occupancy by a member of the family or a tenant, other than for the use and occupancy of a chauffeur and his family. It would be only natural to suppose that if it had been the intent of the owner of lot 19 to have intended it for the use of a chauffeur and his family that the garage would have been attached thereto, rather than to the main dwelling located nearer Colfax Street. The fact that the defendant Tyson investigated the surrounding neighborhood and consulted counsel, indicates an intention to violate the restrictive covenant, if possible. An earnest desire for information would have suggested consulting his neighbors upon the street for the purpose of finding out whether there was any objection to the contemplated improvement.

The plat of the subdivision, in which is contained lot 19, provided that it, as well as the other lots on Colfax Street, should front upon that particular thoroughfare. The agreement establishing the subdivision in question provided, among other things, as follows:

"(f) That no buildings of any kind or character shall be erected on any portion of said property except private dwelling houses designed to be occupied by

one family only together with barns, garages and other outbuildings thereof.

"(g) No residence shall be constructed on any portion of said real estate as now or hereafter platted, unless such portion shall have a frontage of 65 feet or more and then only one residence for each 65 feet and no residence shall be constructed on any lot adjoining Grant street and facing either east or west, unless such lot shall have a frontage of at least 75 feet."

It was the evident purpose of the agreement to create a subdivision of wide-open spaces. The fact that one lot happened to be a corner lot did not entitle it to any advantage over the other lots by reason of that fact. The restrictive covenant, properly construed, provides that but one residence should be erected upon each lot. The building of two dwellings upon lot 19, owned by Tyson, was a direct violation of this covenant. While there is no evidence in the record as to the number of rooms contained in the dwelling, nevertheless, its cost indicates that it is more than a cottage and the photographic exhibit attached to the record discloses the fact that it is a 2-story building substantially built and with a commodious porch presenting the appearance of a modern dwelling of considerable size and evidently capable of housing a large family.

Counsel for the defendants in their brief argue that they do not rely solely upon the question of laches. No set rule can be applied to this particular question and, in the case at bar, we are of the opinion that the defendant Tyson was fully consonant of the fact that in placing two dwellings on the property he was approaching near, at least, the border line of his legal rights. The fact that the property was taken in the name of another rendered it difficult for the complainants to discover the real owner of the property. This may not have been done by Tyson for the purpose of confusing the complainants, but it had that effect.

Moreover, the defendant Tyson was a real estate man and presumably fully versed in covenants and deeds and the rights of owners of property in restricted subdivisions.

The fact that the work on the dwelling facing upon Ewing Avenue was hurried after the neighbors began to make inquiries as to what it was intended to be indicates a disregard of their rights and an intention to push the work regardless of results.

The complainants communicated with the building commissioner who, in turn, saw the defendant Tyson, and there is evidence in the record that complainants were misled by the statements of the workmen to the effect that the basement was intended for the purpose of being utilized under a garage with servants' quarters above, rather than for a dwelling which could be used by a family, other than servants of the defendant Tyson. Under the circumstances, we are of the opinion that the complainants are not estopped by reason of laches upon their part.

The violations by others were such that, in our opinion, they did not deprive the complainants of their rights to question the action of the defendant in violating the particular covenants in this action. There is no single violation of this covenant on Colfax Street on the side upon which lot 19 is located. The fact that there may have been one or two other violations in this particular subdivision does not create such a general breaking down of the covenant in question as to deprive the complainants of their rights to insist upon its enforcement. *O'Gallagher v. Lockhart,* 263 Ill. 489.

We are fully aware of the rule that covenants should be construed so as to resolve all natural rights against the restrictions but, in this case, the restriction requires no interpretation as its meaning is fairly expressed in the covenant. There appears to be a modern tendency to encroach upon the rights of others who

have already purchased and built with full reliance on such covenants and this is not to be encouraged. Persons who have made investments in full reliance upon the fact that others would observe such covenants, should be protected. The Supreme Court of this State in the case of *Turney v. Shriver,* 269 Ill. 164, in its opinion says:

"Appellants knew, when they purchased the lot, of this restriction in the deed and the manner in which it might be used and the restrictions to which it was subject. These matters were all undoubtedly taken into consideration by the parties in fixing the price of the lot at the time it was sold, and if such restriction was a damage to the lot appellants received full advantage of the same at the time they purchased the lot. At any rate, they purchased the lot subject to those conditions and restrictions, and are now bound by them so long as the restrictions are reasonable and not contrary to the public policy or some positive rule of law. We find nothing in the restrictions in question of that character, and it is therefore but equitable to hold that they must abide by the terms of the contract they have made and by virtue of which the land was conveyed to them. *Frye v. Partridge,* 82 Ill. 267; *VanSant v. Rose,* 260 id. 401."

As to the question of the increase in the value of property adjacent by reason of the improvement, we feel that the complainants should not be precluded from asserting their right to the enforcement of the covenant, as the particular object of said covenant appears to have been the preservation of the light and air, rather than any increase in values. Moreover, the building was continued after the filing of the bill and, while it is true that a mandatory injunction may create a hardship, the defendant was fully aware of the fact that by continuing the erection of the dwellings in question he was taking a chance and it apparently ap-

pears to have been his object so to do. We see no force in this argument. The principal or main dwelling facing upon Ewing Avenue and extending along Colfax Street appears to have been provided with a very substantial open porch of iron and brick construction extending out beyond the building line. While this, to some extent, shuts off the light and air and is contrary to the spirit of the covenant, nevertheless, under the interpretation of the courts of this State it is not contrary to the letter of the covenant. Counsel for the complainants are not insisting upon the removal of this part of the main residence, and, therefore, so far as this particular dwelling is concerned, the prayer of the bill should be denied. So far as the dwelling upon the rear of lot 19 is concerned, it is our opinion that it is violative of the restrictive covenant contained in the deed to Burnham and should be removed.

For the reasons stated in this opinion the decree of the circuit court is reversed and the cause remanded with directions to grant a mandatory injunction in accordance with the views expressed in this opinion.

*Decree reversed and cause remanded with directions.*

HOLDOM, P. J., and RYNER, J., concur.