OLE, OLE, INC., d/b/a the Ultimate Sports Bar & Grill, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. WALTER S. KOZUBOWSKI, as City Clerk, City of Chicago, *et al.*, Defendants-Appellees and Cross-Appellants (Judith M. James, Intervenor-Appellee and Cross-Appellant).

First District (1st Division)   No. 1—87—1694

Opinion filed August 7, 1989.

Anthony B. Bruno, of Melrose Park (Sidney Z. Karasik, of counsel), for appellants.

Dennis A. Berkson & Associates, Ltd., of Chicago, for appellee Judith M. James.

Michael Levinson, of Chicago Board of Election Commissioners, of Chicago, for other appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Ole, Ole, Inc., d/b/a The Ultimate Sports Bar & Grill; and Frank R. Diaz, Lisa Seltzer and John F. Hartray, Jr., registered voters of the 14th precinct of the 43rd ward in the City of Chicago, appeal from the dismissal of their amended complaint and supplement thereto which challenged the validity of local option referendum petitions filed pursuant to section 9—4 of the Liquor Control Act of 1934 (Liquor Control Act) (Ill. Rev. Stat. 1987, ch. 43, par. 169) and which also challenged the validity of the redistricting of the 14th precinct of the 43rd ward pursuant to section 11—3 of the Election Code (Election Code) (Ill. Rev. Stat. 1987, ch. 46, par. 11—3). Defendants were Walter Kozubowski, City Clerk of the City of Chicago; and Michael LaVelle, James Nolan and Nikki Zollar, as members of the Board of Election Commissioners of the City of Chicago (the Board). Judith M. James, registered voter of the 14th precinct of the 43rd ward, intervened on behalf of defendants. On appeal, plaintiffs contend that: (1) the redistricting of the 14th precinct of the 43rd ward, which resulted in Ole remaining as the sole liquor licensee in the precinct, followed by the filing of local option referendum petitions by voters of the 14th precinct, denied Ole, as a liquor licensee, its constitutional rights to due process; (2) the boundaries of the 14th precinct of the 43rd ward were altered in violation of section 11—3 of the Election Code; and (3) plaintiff-voters were not barred by the doctrine of *laches* from challenging the redistricting. On cross-appeal, defendants and intervenor contend that the plaintiff-voters lacked standing to challenge the validity of the local option referendum petitions pursuant to the Liquor Control Act and lacked standing to challenge the validity of the redistricting pursuant to the Election Code. For the following reasons, we affirm that part of the trial court's order which dismissed the amended complaint and supplement thereto; vacate that part of the order which enjoined the Board from issuing a proclamation and certifying the results of April 7, 1987, election as to the local option referendum; and remand the cause to the trial court for issuance of an order directing the Board to issue a proclamation and certify the election results regarding the local option referendum.

The record sets forth the following facts relevant to this appeal. Pursuant to section 9—2 of the Liquor Control Act (Ill. Rev. Stat. 1987, ch. 43, par. 167), in June 1986, residents of the 14th precinct of the 43rd ward in Chicago began preparing and circulating local option referendum petitions requesting that the proposition as to whether the sale at retail of alcoholic liquor shall be prohibited in the 14th precinct of the 43rd ward be placed on the November 1986 general elec-

tion ballot. In late July 1986, the Board redistricted the 14th precinct of the 43rd ward. As a result of the redistricting, Ole was the only remaining liquor licensee in that precinct. Prior to the redistricting, there had been four liquor licensees in the precinct. Because the Liquor Control Act requires that local option referendum petitions contain an accurate legal description of the relevant precinct, the legal description on the original petitions had to be revised to reflect the new boundaries and the petitions then had to be recirculated. Because of this delay, the petitions could not be timely filed for the November 1986 general election. Instead, the revised referendum petitions were filed with the city clerk on January 5, 1987, for the April 7, 1987, municipal election.

On March 5, 1987, Ole filed its verified petition challenging the validity of the referendum petitions and the redistricting, and seeking injunctive relief. Rather than divide its complaint into counts, as is the customary practice, Ole set forth its allegations and prayer for relief in four sections, entitled: (1) "Introductory Material"; (2) "Grounds alleging challenges to validity and sufficiency of signatures on petition"; (3) Grounds challenging validity of petition for unreasonable revision of precinct immediately prior to filing of petition of January 5, 1987"; and (4) "Relief Requested." In the "Introductory Material" section, Ole alleged, *inter alia*, that it was the only liquor licensee affected by the petitions and, thus, had standing to challenge the validity of the petitions under section 9—4 of the Liquor Control Act, and that the duty and power of the Board to revise and to regulate precincts is governed by section 11—3 of the Election Code. The second section of Ole's complaint challenged the validity of the signatures on the petitions, alleging that the petitions contained signatures of persons who were not registered voters, forged signatures and duplicate signatures. The third section of the complaint alleged that the change in precinct boundaries was not done in accordance with section 11—3 of the Election Code; that the change in precinct boundaries was for "the sole purpose of attempting to curtail the business of [Ole] without affecting other liquor licensees"; that the rearrangement of precinct boundaries was a "thinly disguised attempt to use the provisions of [section 9—4 of the Liquor Control Act] to revoke the license of [Ole] without any cause whatsoever"; that the rearrangement was arbitrary and capricious; and that the redistricting was done solely to put Ole out of business in violation of its due process rights. In its prayer for relief, Ole requested, *inter alia*, that the court: (1) invalidate the improper petition signatures and determine that the petitions did not contain the requisite number of signatures; (2) deter-

mine that the redistricting of the 14th precinct was unconstitutional "and/or" in violation of section 11—3 of the Election Code; (3) enjoin the submission to the voters of the proposition banning the sale of alcoholic beverages; (4) enjoin defendants from allowing the proposition until the court has had an opportunity to make a full determination; (5) direct defendant Board to return the 14th precinct boundaries to their previous position or to some reasonable arrangement in accord with section 11—3 of the Election Code.

Thereafter, Judith M. James, a registered voter in the 14th precinct of the 43rd ward, was granted leave to intervene and filed a motion to strike and dismiss Ole's complaint. At the hearing on the motion, Ole dismissed by stipulation that portion of its complaint which alleged irregularities in the referendum petition signatures. Thus, the only issue remaining was the challenge to the redistricting. The court then granted intervenor's motion to dismiss the complaint on the grounds that neither the Election Code nor the Liquor Control Act conferred standing upon Ole to contest the redistricting. Thereafter, on March 24, 1987, Ole filed its amended complaint which added two registered voters of the 14th precinct of the 43rd ward as party plaintiffs. Although Ole had previously dismissed by stipulation the challenge to the petition signatures, the amended complaint reiterated the same allegations. In fact, with minor changes, the amended complaint was identical to the original complaint. In response, the intervenor moved to strike and dismiss the amended complaint on the grounds, *inter alia*, that: (1) Ole had previously dismissed count I by stipulation; (2) the court had previously held that Ole did not have standing to challenge the redistricting; (3) the additional plaintiffs have no standing to contest the redistricting because they have suffered no injury or threat of injury as a result of the redistricting; and (4) the doctrine of *laches* bars the claims of the additional plaintiffs. The trial court again struck that portion of the complaint alleging irregularities in the petition signatures and dismissed Ole as a party plaintiff for lack of standing, but otherwise denied the intervenor's motion to dismiss the amended complaint.

The intervenor then filed her answer and affirmative defenses. As defenses, intervenor reasserted her contentions that: (1) the additional plaintiffs lacked standing because they had suffered no injury as a result of the redistricting and (2) the doctrine of *laches* and waiver barred plaintiff-voters from challenging the redistricting. In addition, the intervenor argued that: (1) a challenge to redistricting "is not a proper vehicle" to contest the liquor option referendum petitions; (2) plaintiffs failed to follow the procedure for contesting precinct bound-

aries set forth in section 11—5 of Election Code; and (3) the redistricting was properly effectuated pursuant to section 24A—3.1 of the Election Code. Thereafter, plaintiffs were granted leave to add another 14th precinct registered voter as a party plaintiff.

On April 29, 1987, the trial court entered its order, finding that: (1) section 11—3, not section 24A—3.1 of the Election Code, governed redistricting of the 14th precinct of the 43rd ward; (2) section 9—4 of the Liquor Control Act does not confer standing on Ole to contest the redistricting; (3) Ole did not set out with specificity the defects in the petitions; (4) section 11—5 of the Election Code is not applicable to this case; (5) Ole has no standing to contest redistricting under the Election Code; (6) plaintiff-voters have standing to challenge the redistricting; (7) due to untimely filing, plaintiff-voters are barred by the doctrine of *laches* from maintaining this action; and (8) the Board has "canvassed" the results of the local liquor option election in the 14th precinct of the 43rd ward.[1] Accordingly, the trial court dismissed plaintiffs' amended complaint with prejudice and enjoined the Board from issuing a proclamation or certifying the results of the April 7, 1987, election on the local option referendum in the 14th precinct of the 43rd ward until all issues have been resolved on appeal. The timely appeal and cross-appeal followed.

■■■ Initially, Ole contends that the redistricting of the 14th precinct of the 43rd ward so that it was the only liquor licensee in the precinct deprived it of its constitutional rights of due process. It is well established under Illinois statutory and common law that a license to sell alcoholic beverages is a privilege, not a property right (Ill. Rev. Stat. 1987, ch. 43, par. 119) and, as such, is not subject to due process protections. (*The Great Atlantic & Pacific Tea Co. v. Mayor & Commissioners* (1937), 367 Ill. 310, 11 N.E.2d 388; *People v. McBride* (1908), 234 Ill. 146, 84 N.E. 865; *Black Knight Restaurant, Inc. v. City of Oak Forest* (1987), 159 Ill. App. 3d 1016, 513 N.E.2d 109; *Huguley v. Marcin* (1976), 39 Ill. App. 3d 230, 349 N.E.2d 564; *Malito v. Marcin* (1973), 14 Ill. App. 3d 658, 303 N.E.2d 262.) This legal proposition is not a narrow one, dependent upon the factual circumstances, as Ole would have this court believe. Rather, it is fundamental statutory law promulgated pursuant to the broad regulatory authority granted to individual States to regulate the liquor industry within their borders. See *Craig v. Boren* (1976), 429 U.S. 190, 50 L. Ed. 2d 397, 97 S. Ct. 451.

---

[1]The parties have stipulated on appeal that the unofficial result of the local option referendum was to vote dry the 14th precinct of the 43rd ward.

Furthermore, we find Ole's reliance on *Philly's v. Byrne* (7th Cir. 1984), 732 F.2d 87, for its due process contention, misplaced. In *Philly's*, a consolidated appeal, plaintiff-restaurants appealed the dismissal of their suits brought under section 1 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)) which alleged that the operation of the local option liquor law deprived them of property without due process of law. Contrary to Ole's contention that the *Philly's* court reaffirmed the established rule that "an Illinois liquor license is property in a functional sense within the meaning of the Fourteenth Amendment," the *Philly's* court declined to reach the question as to whether a liquor license was a property right. Instead, the court recognized only that plaintiffs had been deprived of something and regardless of what that something was, there was no denial of due process because the local option provision is legislative in character and due process safeguards are not required of legislative action. 732 F.2d at 92.

Ole further relies on *Philly's* for the proposition that the Liquor Control Act does not permit the precinct's voters to single out a particular liquor seller to shut down. Although the *Philly's* court made this statement, in doing so, the court was clearly referring to the fact that when the voters pass a local option referendum banning the sale of alcoholic beverages in a precinct, that ban must apply to all the retail liquor outlets in that precinct. In the case at bar, it is undisputed that the ban applies to all retail liquor outlets in the 14th precinct of the 43rd ward. The fact that Ole is the only retail liquor outlet in that precinct does not alter the precinct-wide applicability of the ban. The *Philly's* court recognized just such a situation when it noted that a precinct may contain only one liquor store or bar and that the voters may decide to shut down that store or bar simply because they do not like the owner. However, the court reasoned that that "opportunity for abuse *** is not so great as to make the local-option feature of Illinois' law unconstitutional." (732 F.2d at 93.) Accordingly, we conclude that Ole's status as a liquor licensee is not afforded due process protections.

Next, plaintiffs contend that because the boundary lines of the 14th precinct were not redrawn pursuant to section 11—3 of the Election Code, the local option referendum petitions are invalid. Before addressing the challenge to the petitions which is predicated on the redistricting challenge, it is necessary to review the trial court's determination as to plaintiffs' standing under the Liquor Control Act and the Election Code and to review the applicability of the doctrine of *laches* to plaintiff-voters.

■■ ■ With respect to the question of Ole's standing, Ole con-

tends that section 9—4 of the Liquor Control Act confers standing upon it to bring a cause of action under the Election Code challenging the redistricting of the 14th precinct because the validity of the petitions is directly dependent upon the legality of the redistricting. We agree with Ole that section 9—4 of the Liquor Control Act confers standing upon a liquor licensee to contest the validity of local option referendum petitions. However, we are not persuaded that standing conferred by section 9—4 of the Liquor Control Act extends beyond allegations of invalidity predicated on violation of that Act. In our view, Ole's attempt to bootstrap section 9—4 standing onto the Election Code is contrary to well-established Illinois law that where a cause of action alleges injury due to violation of a statute, the doctrine of standing requires that the plaintiff be one of the class designed to be protected by that statute, or for whose benefit the statute was enacted, and to whom a duty of compliance is owed. (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 359 N.E.2d 1137.) Ole, a corporate entity, clearly is not within the zone of interest sought to be protected by the Election Code.

The basic intent of the Election Code is to give all persons an opportunity to vote and to prevent fraud. (*People ex rel. Schwartz v. Fagerholm* (1959), 17 Ill. 2d 131, 161 N.E.2d 20.) Provisions of the Election Code which govern challenges brought under the Code specifically limit the right to bring such challenges to "any person" (Ill. Rev. Stat. 1987, ch. 46, par. 9—20), "any legal voter" (Ill. Rev. Stat. 1987, ch. 46, par. 10—8) and "any 5 electors" (Ill. Rev. Stat. 1987, ch. 46, par. 23—24). Section 3—1.2 of the Election Code defines both "voter" and "elector" as "a person who is registered to vote at the address shown opposite his signature on the petition or was registered to vote at such address when he signed this petition." (Ill. Rev. Stat. 1987, ch. 46, par. 3—1.2.) The legislature clearly has imposed no protections nor conferred any special benefits under the Election Code for corporate entities such as Ole. Instead, the object of the Election Code, the nature of the duties imposed by it, and the benefits resulting from its protections are directed to the registered voters of Illinois. Because Ole has no protected statutory interest under the Election Code, it cannot fulfill the fundamental requirements of standing. (See *Board of Library Trustees of the Frankfort Public Library District v. Board of Library Trustees of the Mokena Public Library District* (1987), 158 Ill. App. 3d 830, 511 N.E.2d 997.) Accordingly, we conclude that the trial court properly held that Ole had no standing to challenge the redistricting of the 14th precinct under either the Liquor Control Act or the Election Code.

Regarding plaintiff-voters' standing under the Liquor Control Act and under the Election Code and application of the doctrine of *laches* to plaintiff-voters' lawsuit, we initially note that plaintiff-voters have improperly intermingled their challenges to the redistricting under the Election Code with their challenges to the local option referendum petitions under the Liquor Control Act. These are two distinct causes of action, governed by their respective statutory requirements for challenge. By intermingling the causes of actions, plaintiff-voters are, in effect, improperly circumventing these statutory requirements. As previously stated, the benefits and protections under the Liquor Control Act and the benefits and protections under the Election Code are separate and distinct. Therefore, plaintiff-voters' standing to bring their cause of action under each statute must be addressed separately.

First, plaintiff-voters' right to file a challenge to the local option referendum petitions under the Liquor Control Act is governed by section 9—4 of that Act which provides, in pertinent part:

"Any 5 legal voters or any affected licensee of any political subdivision, district or precinct in which a proposed election is about to be held as provided for in this Act, within any time up to 30 days immediately prior to the date of such proposed election and upon filing a bond for costs, may contest the validity of the petitions for such election by filing verified petition in the Circuit Court for the county in which the political subdivision, district or precinct is situated, setting forth the grounds for contesting the validity of such petitions." Ill. Rev. Stat. 1987, ch. 43, par. 169.

In the present case, there are only three plaintiff-voters, not the required five. Accordingly, plaintiff-voters have failed to satisfy the statutory requirements of section 9—4 and, thus, have no standing to file a challenge to the local option referendum petitions pursuant to the Liquor Control Act.

Second, regarding plaintiff-voters' standing under the Election Code to challenge the redistricting of the 14th precinct of the 43rd ward, defendants and intervenor contend that plaintiff-voters lacked the requisite standing because they suffered no direct injury as a result of the redistricting. However, defendants and intervenor have failed to provide this court with persuasive authority which supports this contention. Accordingly, we find that the trial court properly determined that plaintiff-voters had standing to bring their challenge under the Election Code.

Next, plaintiff-voters argue that the trial court erred in applying the doctrine of *laches* to their redistricting challenge because

defendants failed to demonstrate how they were prejudiced by the alleged delay in filing. The equitable doctrine of *laches* is founded on the maxim that equity aids the vigilant and not those who have slept on their rights (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341), and can be invoked or rejected at the trial court's discretion. The trial court's determination will not be disturbed absent a clear showing of abuse of that discretion. (*Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 378 N.E.2d 588.) While there are no fixed rules to determine what constitutes *laches* (*Admiral Builders Corp. v. Robert Hall Village* (1981), 101 Ill. App. 3d 132, 427 N.E.2d 1032), mere delay in asserting a right generally does not constitute *laches*. Defendant must also have relied on the circumstances complained of to the degree that granting relief to plaintiff would be inequitable and unjust. *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341; *Miller v. Siwicki* (1956), 8 Ill. 2d 362, 134 N.E.2d 321; *Harper v. City Mutual Insurance Co.* (1978), 67 Ill. App. 3d 694, 385 N.E.2d 75.

■ In the present case, the record indicates that the redistricting of the 14th precinct of the 43rd ward was accomplished in July 1986 and plaintiff-voters did not join as plaintiffs until March 24, 1987, after Ole had been dismissed out of the proceeding for lack of standing. Plaintiff-voters argue that their "right to a fairly 'across-the-board' conducted referendum, had not ripened *** until the referendum petitions were filed six months after the redistricting had been completed." We disagree. If the redistricting violated section 11—3 of the Election Code in March 1987, it violated the Code in July 1986 when it was completed. The filing of the petitions did not change the manner in which the redistricting had been accomplished. Thus, we find the delay aspect of *laches* is satisfied. With respect to defendants' prejudice or injury should plaintiff-voters' claim not be barred, this court takes judicial notice that during the period between completion of the redistricting and the filing of plaintiff-voters' complaint, two elections were held: a general election on November 4, 1986, and a municipal primary election on February 24, 1987. It can be presumed that these elections were held in accordance with the redistricting. In our view, sound judgment and practicalities dictate that the method of redistricting cannot act to invalidate the elections in part, or as a whole. (See *Town of Naples v. County of Scott* (1982), 111 Ill. App. 3d 186, 443 N.E.2d 779.) Defendants would be clearly prejudiced by such a result. Furthermore, sound public policy demands that those who claim a right against a governmental body should press their claims with diligence. (*Neal v. Board of Education, School District No. 189* (1981), 93 Ill. App. 3d 386, 417 N.E.2d 217.) Accordingly, we conclude

that the trial court did not abuse its discretion in holding that plaintiff-voters' claim challenging the redistricting of the 14th precinct of the 43rd ward was barred by the doctrine of *laches*.

For the aforementioned reasons, we affirm that part of the trial court's order that dismissed plaintiffs' amended complaint and the supplement thereto; vacate that part of the order that enjoined the Board from issuing a proclamation or certifying the results of the April 7, 1987, election on the local option referendum in the 14th precinct of the 43rd ward; and remand the cause to the trial court of issuance of an appropriate order directing the Board to issue a proclamation and to certify the results as to the local option referendum.

Affirmed in part; vacated in part; and remanded with instructions.

BUCKLEY and O'CONNOR, JJ., concur.