THOMAS J. PETTEY *et al.*, Plaintiffs-Appellees, v. FIRST NATIONAL BANK OF GENEVA, as Trustee, *et al.*, Defendants-Appellants (Charles J. Groenings *et al.*, Intervenors and Plaintiffs-Appellants; William L. Achenbach *et al.*, Intervenors and Defendants-Appellees).

Second District  Nos. 2—91—0156, 2—91—0159 cons.

Opinion filed February 24, 1992.

Wendell W. Clancy, of Clancy & Krippner, of St. Charles (Maureen A. Hill, of counsel), for appellants Joseph C. Boyd and First National Bank of Geneva.

Robert S. Minetz and Sarah S. Hirsen, both of Cowan & Minetz, of Chicago, and Roy A. Safanda, of Law Office of Roy A. Safanda, and Robert F. Casey, both of St. Charles, for other appellants.

Law Offices of Cooper & Storm, of Geneva, and Altheimer & Gray, of Chicago (Stephen M. Cooper, Peter M. Storm, and Kenneth C. Shepro, of counsel), for appellees.

Daniel E. Compton and Leo M. Flanagan, Jr., both of Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C., of Elgin, for St. Charles Country Club and Gary-Wheaton Bank of Batavia.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiffs, a group of 130 homeowners whose land is included in a restrictive covenant running with the land, sought injunction and declaratory relief against defendants, including Joseph C. Boyd, Charles J. Groenings, and John A. Groenings, to prevent their proposed development of land in violation of the covenant. The defend-

542

ants and their cotrustee La Salle National Bank appeal from the bench trial judgment for the plaintiffs. The court declared the covenant to be valid and enforceable and enjoined the defendants' development of Boyd's and Groenings' properties to prevent violation of the provisions of the covenant.

Boyd argues (1) that his property is explicitly excluded from the legal description contained in the restrictive covenant; (2) that the plaintiffs are barred from relief under the affirmative defense of *laches*; and (3) that the court erred in dismissing Boyd's malicious prosecution counterclaim. Together, the defendants argue (4) that the trial court improperly allowed testimony; (5) that the trial court improperly struck their jury demand; (6) that the plaintiffs' complaint should have been dismissed for failure to add all necessary parties; (7) that substantial changes in the area made the restrictive covenant unenforceable; and (8) that the landowners in the area waived enforcement of the covenant.

Shortly after the plaintiffs filed their lawsuit, they voluntarily dismissed the counts against the Groenings. The Groenings then filed first a counterclaim and third-party complaint, then an amended counterclaim naming every remaining landowner within the area covered by the covenant as additional defendants. The Groenings were also granted leave to file an intervenors' complaint naming the plaintiffs, the other defendants, and the third-party defendants all as intervenor defendants.

The following facts were stipulated to at the trial. There is a restrictive covenant dated November 27, 1937, running with the land recorded against approximately 1,000 acres in the City of St. Charles, the Village of Wayne, and St. Charles Township. The covenant begins with a preamble stating that the purpose of the restrictions is to "preserve the present high character of use and occupancy" of the land. The pertinent restrictions provide in part:

"1. No principal residence shall be erected on any one tract of land of less than four (4) acres in extent, any one dimension of which shall be not less than two hundred (200) feet, except that the occupant of such principal residence may erect on such a tract one (1), but not more than one (1), separate additional residence as living quarters for guests or servants.

3. No principal residence, separate residence for children, guests or servants, incinerator, garage, or other building shall be erected within fifty (50) feet from any property line and within seventy-five (75) feet from the center line of any highway or road.

4. Said real estate shall be used for residential and farming purposes only; said real estate shall not be used for any commercial purpose whatsoever, nor shall advertising signs or billboards be erected thereon.

5. No person other than of the Caucasian Race shall be permitted to occupy [sic] any portion of said real estate, except as a servant of a Caucasian owner or Caucasian tenant residing thereon."

Boyd owns 8.6 acres, and the Groenings own approximately 70 acres of real estate within the covenant area. Boyd had plans to rezone his property from single-family residential to a planned unit development (PUD) to consist of 12 units. Boyd's proposal would exceed the restriction in the covenant as it allowed two residences per four-acre lot.

Boyd filed his PUD plan with the City of St. Charles on January 14, 1987, and he requested rezoning in accordance with his plan. The St. Charles Plan Commission held a public hearing on the subject, and several plaintiffs appeared and objected to the plan on the basis that it violated the covenant. The City of St. Charles approved the plan and granted the rezoning on November 21, 1988.

On January 26, 1989, the plaintiffs commenced their lawsuit. Before commencement of the suit, Boyd expended over $50,000 installing sewer and water facilities and $70,000 on site plans, landscaping plans and engineering plans. After the St. Charles commission rezoned Boyd's property, the Groenings filed a petition to annex their 70-acre site to St. Charles so that it could be developed with approximately 160 lots ranging from one-fourth to one-half acre.

It was also stipulated that within the area covered by the restrictive covenant, there had been several possible covenant "violations." There are eight homes in Persimmon Woods which sit on tracts of land ranging in size from .71 to 3.75 acres, violating the four-acre lot minimum. Persimmon Woods is located on the one noncontiguous portion of the land affected by the covenant. None of the plaintiffs knew at the time of construction that the Persimmon residences were within the land described in the covenant, and they raised no objections to the residences' construction.

The covenant area also includes two residences which have a structure erected within 50 feet of the property line, in violation of the covenant. One of them is 49.10 feet from the property line. The other lot's structures within 50 feet of the property line were in existence prior to the recording of the covenant.

There are a number of parcels within the covenant which contain principal residences erected on a tract of land which has at least one boundary line less than 200 feet long. The plaintiffs never objected to these violations of the covenant.

There are three possible "use" violations within the covenant area. The first is the 114-acre St. Charles Country Club (Country Club), which together with the Persimmon residences comprise the noncontiguous section of land covered by the covenant. None of the plaintiffs knew at the time of its construction that the club was within the land described in the covenant, and none of them objected to its construction or its operation.

The second possible "use" violation of the covenant is a building known as Dunham Castle, which has been operated as a rental property since 1963. None of the plaintiffs had objected to the operation of Dunham Castle as rental apartments. The third possible "use" violation is by several streets and parcels owned by the City of St. Charles and by the St. Charles Park Foundation used for municipal purposes.

Another possible violation of the covenant is by signs advertising the sale of properties and signs advertising builders, remodelers or decorators. Such signs were placed on properties within the covenant area without objection by any of the plaintiffs.

There was substantial evidence presented by stipulation and expert testimony that development had taken place surrounding the restricted land and that development had occurred in Kane County, the City of St. Charles, and, more specifically, along the southern and eastern boundaries of the covenant property. All of the development which occurred along these boundaries was by residential, single-family dwellings. Most of those dwellings were on lots less than four acres. The residential developments west and north of the covenant boundaries are on lots at least four acres in size.

The evidence also established that (1) when the covenant was signed, there were 22 covered landowners; now there are 260; (2) that the traffic on the roads servicing the covenant area has increased as much as 225%; (3) that various sections of the area have been changed from unincorporated property to incorporated residential subdivisions; (4) that the restrictions make the economic market for the properties smaller and make the properties more difficult to sell; and (5) that if the lots could be sold in smaller parcels, a greater price per acre could be achieved.

We first address the three issues argued in Boyd's appellate brief. Initially, Boyd argues that the court erred in finding that his land falls

within the legal description of the covenant. Boyd argues the legal description of the land covered by the covenant can be interpreted as excluding his land. The plaintiffs argue that Boyd's deed to his land specifically states that his property is subject to the restrictive covenant in question and that Boyd's interpretation of the covenant's legal description is not a logical construction of the language.

The court heard extensive testimony from two experts, who testified on behalf of both the plaintiffs and the defendants. The court made an express finding that Boyd's property was subject to the covenant.

■ The Illinois Supreme Court stated that in the judicial enforcement of restrictive covenants all doubts must be resolved in favor of natural rights and against restrictions thereon. (*Watts v. Fritz* (1963), 29 Ill. 2d 517, 521.) The court's decision in that regard will only be overturned if the court's findings are against the manifest weight of the evidence. (*Rogers v. Jerseyville* (1990), 196 Ill. App. 3d 136, 142.) In this case, the court was aware of the standard to use in interpreting restrictive covenants and found that Boyd's property was not excluded by the language of the covenant. Considering the strained interpretation of the language requested by Boyd and the language in Boyd's deed stating that the land is restricted by the covenant, we find that the court's decision on this issue is not against the manifest weight of the evidence. 196 Ill. App. 3d at 142.

■ Second, Boyd argues that the plaintiffs are barred from injunctive relief, asserting the affirmative defense of *laches*. Boyd argues that he had already spent $120,000 in development costs before the plaintiffs commenced their suit and that, due to the plaintiffs' delay in commencing their suit to enforce the covenant, he was misled and relied on their acquiescence. The plaintiffs argue that Boyd was aware of the covenant's restrictions when he purchased the land and that the plaintiffs timely objected to the development when they attended the zoning hearings and objected to the plan on the basis of the covenant.

*Laches* is a doctrine which bars a plaintiff relief where, because of the plaintiff's delay in asserting a right, the defendant has been misled or prejudiced. (*City of Rochelle v. Suski* (1990), 206 Ill. App. 3d 497, 501.) However, where the circumstances indicate that the party knowingly violated a restriction or a right and pressed ahead, suggesting a purpose to proceed irrespective of the consequences, *laches* may not be used as an affirmative defense. (*Fick v. Burnham* (1929), 251 Ill. App. 333, 341.) The application of the equitable doctrine of

*laches* is a matter of the trial court's discretion. *Ole, Ole, Inc. v. Kozubowski* (1989), 187 Ill. App. 3d 277, 286.

The record reveals that the plaintiffs objected to the proposed development in a timely fashion and that Boyd knew of the restrictive covenant when he began to develop his land. We do not find that the court erred in finding that the plaintiff was not guilty of *laches. Ole*, 187 Ill. App. 3d at 286-87.

■ Third, Boyd argues that the court erred in dismissing his counterclaim which alleged malicious prosecution, even though he concedes that the underlying cause of action was not resolved in his favor. When charging malicious prosecution, a plaintiff must allege (1) that judicial proceedings were brought against the plaintiff; (2) that there was a lack of probable cause for those proceedings; (3) that the defendant demonstrated malice in instituting the proceedings; (4) that the cause of action was terminated in the plaintiff's favor; and (5) that the plaintiff was injured. (*Bismarck Hotel Co. v. Sutherland* (1988), 175 Ill. App. 3d 739, 748.) We are aware of no authority allowing a suit of malicious prosecution prior to the termination of the underlying action. Boyd has presented no such authority to his court, and we therefore consider this issue waived. *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 608.

■ Fourth, we address the defendants' claim that the trial court improperly allowed the testimony of Michael Feyette, in violation of Supreme Court Rule 4.2 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 4.2). Feyette testified that plaintiffs' counsel, Cooper, contacted him and requested that he join the case as a plaintiff. Cooper knew that Feyette was represented by other counsel and that Feyette had not decided whether to join as a party to the suit. The defendants argue that this was a breach of professional conduct and should bar the testimony of this witness.

Rule 4.2 prohibits an attorney representing a client in a matter from *ex parte* communication with a person who the attorney knows is represented by another lawyer, unless the first lawyer obtained the consent of the other lawyer representing the party. (134 Ill. 2d R. 4.2.) However, where the contact between an attorney and a client represented by another lawyer is *de minimis*, there may be no violation. (See *Mahan v. Louisville & Nashville R.R. Co.* (1990), 203 Ill. App. 3d 749, 754.) In this case, the communication appears to be *de minimis*, and the defendants did not establish that this communication resulted in any prejudice to them. We find that the court did not err in allowing Feyette to testify. See *Mahan*, 203 Ill. App. 3d at 754.

■■ Fifth, the defendants argue that the trial court improperly denied their demand for a jury trial. They argue that the issues of whether the neighborhood had changed significantly and whether the plaintiffs had waived their rights to enforce the covenant were issues of fact that entitled them to a jury.

There is no constitutional right to a jury in equity actions. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175, 196, *aff'd* (1987), 118 Ill. 2d 23.) In a suit seeking equity relief, the denial of a jury demand is within the discretion of the trial court. *De Kalb Bank v. Purdy* (1990), 205 Ill. App. 3d 62, 75; Ill. Rev. Stat. 1989, ch. 110, par. 2—1111.

Because declaratory judgment actions are neither legal nor equitable, but *sui generis*, the right to a trial by jury depends upon whether the underlying claims are legal or equitable in nature. (*Zurich*, 145 Ill. App. 3d at 196.) In actions for declaratory judgment, the right to trial by jury depends upon the relief sought. (*Zurich*, 118 Ill. 2d at 58.) If the underlying actions for relief are historically available only in a court of equity, the issues raised by the pleadings are equitable, and any issues of fact are tried to the court without a jury. (*Zurich*, 145 Ill. App. 3d at 196.) When injunctive relief is sought, the authority to grant relief generally rests on the courts of equity. *Junkunc v. S.J. Advanced Technology & Manufacturing Corp.* (1986), 149 Ill. App. 3d 114, 118.

The plaintiffs in this case seek declaratory relief and injunctive action to prevent development of the defendants' land in violation of the restrictive covenant. The defendants ask for declaratory relief to prevent the enforcement of the restrictive covenant and also assert the equitable defense of *laches*. We find that these pleadings are substantively in the nature of equitable actions and find that the court did not abuse its discretion in striking the defendants' jury demand. See *De Kalb*, 205 Ill. App. 3d at 75.

■■ Sixth, the defendants argue that the plaintiffs' complaint should have been dismissed because the plaintiffs failed to join all of the landowners as necessary and indispensable parties to the lawsuit. The plaintiffs argue that they voluntarily dismissed their action against the Groenings so that there was no complaint against the Groenings that could have been dismissed for the failure to add parties. They also argue that when the Groenings intervened and named all of the landowners as additional parties, this cured any defect.

It is well settled that under fundamental principles of due process, a court is without jurisdiction to enter an order or judgment which affects a right or interest of someone not before the court. (*Feen v. Ray*

(1985), 109 Ill. 2d 339, 344.) Pursuant to this requirement, all persons must be made parties to the suit who are legally or beneficially interested in the subject matter of the litigation so that the court may dispose of the entire controversy. *Feen,* 109 Ill. 2d at 344.

In this case, because of the plaintiffs' failure to bring all necessary parties before the court there was a defect in the pleadings. Nevertheless, the defect was cured when the Groenings intervened and made all of the owners parties to this action. (See *Pelley v. Illinois Municipal Water Co.* (1986), 142 Ill. App. 3d 765, 769-70.) While the defendants contend that his joining of the necessary and indispensable parties did not cure the defect of the plaintiffs' complaint, they failed to cite and we find no authority for this position. This court of review is entitled to have the issues clearly defined and to be cited pertinent authority; bare contentions without authority do not merit consideration on appeal. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 608.) We treat the defendants' argument as waived pursuant to Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)).

●7 Seventh, the defendants argue that the court erred in enforcing the restrictive covenant because the neighborhood has changed significantly since the restrictions were created. It is well settled that even where a general plan is evident in a covenant, its restrictions under the covenant will not be enforced where the character of the neighborhood had changed so much since the restrictions were imposed as to defeat the original purpose of the plan. (*Wallace v. Hoffman* (1949), 336 Ill. App. 545, 554.) For such a change to relieve or cancel the enforcement of a restriction, it must be so radical and complete as to render the restriction unreasonable, confiscatory, discriminatory, or as practically to destroy the purpose for which the restriction was originally imposed. (*Cordogan v. Union National Bank* (1978), 64 Ill. App. 3d 248, 254; see also *Rogers v. City of Jerseyville* (1990), 196 Ill. App. 3d 136, 139-40.) The mere fact that the property in question is worth more without the restrictions is not decisive. *Tones Inc. v. La Salle National Bank* (1975), 34 Ill. App. 3d 236, 243.

The trial court found that the change in the character and environment of the neighborhood affected by the restrictive covenant was not sufficient to render the restrictive covenant unenforceable. The court further found that the changes in the neighborhood were virtually "nil and *de minimus.*"

As stated in the preamble of the covenant, the restrictions were put in place to preserve the high character of use and occupancy of the subject property. This court ignores the language of the preamble which restricts land ownership to Caucasians as this passage is mean-

ingless and is judicially unenforceable. (See *Shelley v. Kraemer* (1948), 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836.) The record included significant evidence that the changes alleged by the defendant in the character of the neighborhood have not transformed it in any manner which would warrant the removal of the lot size restrictions and that the restrictions still support the purpose of the covenant. (See *Cordogan*, 64 Ill. App. 3d at 254.) As the trial court's finding that the covenant was still enforceable was guided by these principles and supported by the record, we will not overturn its findings. See *Rogers*, 196 Ill. App. 3d at 142.

Lastly, the defendants argue that the plaintiffs have waived enforcement of the covenant by acquiescing to prior violations. The defendants specifically refer to the construction of the Country Club, which violates the residential and farming restriction, the Persimmon residences which violate the four-acre minimum restriction, several violations of the 200-foot lot-line restriction, and two homes violating the restriction against structures within 50 feet of a property line. The plaintiffs argue that the past violations are minor, that most occurred without their knowledge, and that acquiesced-to violations of one type of restriction do not waive enforcement of all restrictions.

Where there has been acquiescence to prior restrictive covenant violations that go to the very substance of a general plan or of a particular restriction, the plaintiff will be held to have waived any right to enforce it. (*Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 333, citing *Watts v. Fritz* (1963), 29 Ill. 2d 517, 523.) However, acquiescence to minor violations of a restriction will not prohibit the subsequent enforcement of that restriction. (*Citizens Utilities Co. v. Centex-Winston Corp.* (1989), 185 Ill. App. 3d 610, 614.) In determining the extent of prior violations, separate and distinct restrictions which have been violated will not amount to acquiescence of the violation currently at issue. (See *Cordogan v. Union National Bank* (1978), 64 Ill. App. 3d 248, 255.) The trial court's findings as to the materiality of the past violations of the restrictive covenant will only be overturned on appeal if the findings are against the manifest weight of the evidence. (*Rogers*, 196 Ill. App. 3d at 142.) The trial court's decision will be considered to be against the manifest weight of the evidence if, after a review of the evidence, it is clearly evident that the conclusion opposite to the one reached by the trial court was the proper disposition. 196 Ill. App. 3d at 142.

The court found that the past violations of the lot size restrictions were not substantial or material based on the entire evidence in the case, nor did they defeat the legitimate, enforceable purpose of the

covenant provisions. Considering the evidence, including eight demonstrated violations of lot size restrictions, located in a separate, non-contiguous section of the covenanted land, we do not find that the trial court's decision was against the manifest weight of the evidence. See *Amoco*, 133 Ill. App. 3d at 333.

In a separate brief, the St. Charles Country Club correctly argues that the defendants failed to argue the issue of affirmative relief which they sought in their original complaint against those currently in violation of the covenant. Accordingly, we find that this relief sought is waived. See *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 400-01.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

WOODWARD and INGLIS, JJ., concur.