**87 SOUTH ROTHSCHILD LIQUOR MART, Plaintiff,**

v.

**Walter S. KOZUBOWSKI, City Clerk of the City of Chicago, the Board of Election Commissioners of the City of Chicago, Richard M. Daley, Mayor of the City of Chicago, the Local Liquor Control Commission of the City of Chicago, and the State of Illinois Liquor Control Commission, Defendants.**

**No. 90 C 5781.**

United States District Court, N.D. Illinois, E.D.

Nov. 2, 1990.

Michael A. Moses, Morton Siegel, Richard G. Schoenstadt, Siegel Moses & Schoenstadt, Chicago, Ill., for plaintiff.

Stewart Fullerton, Mary F. Harkenrider, Asst. Corp. Counsel, Michael P. Levinson, Chicago Bd. of Election Com'rs, Winston Mardis (Local Liquor Control Com'r) James D. Adinamis (Chief Technical Advisor/State of Ill. Liquor Control Com'n) Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Plaintiff 87 South Rothschild Liquor Mart, Inc. ("Liquor Mart") seeks declaratory and injunctive relief against Walter S. Kozubowski, City Clerk of the City of Chicago ("Kozubowski"), the Board of Election Commissioners of the City of Chicago ("Election Board"), Richard M. Daley, Mayor of the City of Chicago ("Daley"), the Local Liquor Control Commission of the City of Chicago ("Chicago Liquor Control Commission"), and the State of Illinois Liquor Control Commission ("State Liquor Control Commission").[1] The genesis of Liquor Mart's complaint is the Illinois legislature's 1989 amendment to Article IX of the Illinois Liquor Control Act. The pertinent statute (with emphasis supplied to language added by the 1989 amendment) reads:

When any legal voters of a precinct in any city, village or incorporated town of more than 200,000 inhabitants, as determined by the last preceding Federal census, desire to pass upon the question of whether the sale at retail of alcoholic liquor shall be prohibited in the precinct *or at a particular licensed establishment within the precinct*, they shall, at least 90 days before an election, file in the office of the clerk of such city, village or incorporated town, a petition directed to the clerk, containing the signatures of not less than 25% of the legal voters registered with the board of election commissioners or county clerk, as the case may be, from the precinct. *Provided, however, that when the petition seeks to prohibit the sale at retail of alcoholic liquor at a particular street address of a licensed establishment within the precinct the petition shall contain the signatures of not less than 40% of the legal voters requested from that precinct.* The petition shall request that the proposition "Shall the sale at retail of alcoholic liquor be prohibited in *(or at)* ......?" be submitted to the voters of the precinct at the next ensuing election at which such proposition may be voted upon. The submission of the question to the voters of such precinct at such election shall be mandatory when the petition has been filed in proper form with the clerk.

Ill.Ann.Stat. ch. 43, para. 167 (Smith–Hurd 1990).

On August 8, 1990, Kozubowski issued a certification to the Election Board declaring that a petition implicating Liquor Mart's license had been filed with the City Clerk's office. That certification would, under the amended statute, require the placement on the November 6, 1990 ballot

---

1. Defendants' briefs are styled as memoranda in support of motions to dismiss. We grant State Liquor Control Commission's motion based on its Eleventh Amendment argument, to which Liquor Mart in its reply memorandum essentially accedes. We also find persuasive the argument that defendants Kozubowski, Daley, and Chicago Liquor Control Commission are "not the real parties in interest [because] they only administer the statute." Defendants' Memorandum at 2. We therefore dismiss the complaint as to those three defendants as well. The remaining defendant, Election Board, is the proper party in interest in this case, and we deny its motion to dismiss.

of the following referendum: "Shall the sale at retail of alcoholic liquor be prohibited at the following address: 717 East 87th Street?"

Liquor Mart alleges that such a referendum puts it in "serious and immediate peril of losing its valued license to sell liquor at the establishment it has been operating for the past 30 years." Plaintiff's Memorandum at 4. Should voters answer the referendum's query in the affirmative, Liquor Mart's liquor license would be voided, and no new licenses can be issued at its location unless precinct voters act affirmatively to discontinue the prohibition. *Id.* at para. 174. Forty-seven months must elapse before precinct voters can reconsider any previous prohibition achieved by referendum. *Id.* at para. 175.

On October 3, 1990, Liquor Mart filed its complaint under 42 U.S.C. § 1983 (1988). It seeks a declaration that the targeted local-option referendum provision in paragraph 167 is unconstitutional, and, further, an injunction against the operation and enforcement of the statute. Having considered the parties' expedited briefs, we find in favor of Liquor Mart. As explained below, those portions of paragraph 167 that allow a targeted local-option referendum impermissibly infringe Liquor Mart's right to due process of law, and are therefore unconstitutional.[2]

### I. Discussion

The Seventh Circuit upheld the constitutionality of paragraph 167 as it existed prior to the 1989 amendments. In *Philly's v. Byrne*, 732 F.2d 87 (7th Cir.1984), the court found no denial of due process when precinct voters decided to vote the *entire* precinct "dry."[3] *Id.* at 91, 94. In deciding that case, however, Judge Posner compared a (constitutional) law permitting precinct-wide prohibition of liquor sales by voter referendum to a (presumably unconstitu-

tional) law permitting targeted prohibitions by referendum. *Id.* at 92–93. Defendants here argue that *Philly's* is a case supporting their position, and that any discussion in the opinion about hypothetical laws is merely dicta. Defendants' Memorandum at 4 n. 3.

Dicta or not, Judge Posner's analysis is cogent, tightly-crafted, and persuasive. We adopt it in this case, and excerpt the pertinent passage here:

Whether a particular procedure for deciding a question is "fair" depends on the nature of the abuse that the procedure is designed to prevent. Usually it is designed to prevent a mistaken application of law. See, e.g., *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). That is not the problem here. The concern is not that the voters of a precinct might make a mistake in deciding to ban the retail sale of liquor; when they vote on the question they are voting their personal values and there is no criterion by which a court or other outsider could judge their decision correct or incorrect. The concern is that the voters might "gang up" to drive out of business a seller of liquor whom they disliked for reasons unrelated to any plausible public interest. This is a distinct type of arbitrary action that the requirement of fair procedure is designed to prevent, or at least make less likely to occur. See Tribe, American Constitutional Law 503–04 (1978). It is therefore relevant to point out that the Illinois act does not permit the precinct's voters to single out a particular liquor seller to shut down. Compare *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 103 S.Ct. 505, 511, 74 L.Ed.2d 297 (1982). The precinct can choose only between allowing and not allowing the retail sale of alcoholic beverages. See Ill.Rev.Stat. 1981, ch. 43, ¶ 171. The voters must shut

---

**2.** Liquor Mart presents three main arguments in its complaint. It alleges that paragraph 167: 1) infringes its due process rights; 2) constitutes a Bill of Attainder, in violation of Article 1, § 10 of the United States Constitution; and 3) represents impermissible "special legislation," in violation of both the federal and state constitutions. Because the due process violation issue

is dispositive, we need not address Liquor Mart's second and third arguments.

**3.** Apparently, the Illinois General Assembly when it amended paragraph 167 in 1989 was either unaware or unimpressed with Judge Posner's analysis in *Philly's v. Byrne*.

down all the retail liquor outlets in the precinct in order to shut down one and they must shut them down for four years because a new referendum cannot be held before that period has elapsed. *Id.,* ¶ 175. This means not only that the licensee who is disliked is protected to some extent by the licensee who is liked but also that the voters cannot impose costs on liquor sellers without imposing costs on themselves—the costs of not being able to buy liquor in the precinct.

The requirement that the precinct electorate act across the board shows that the judgment the voters are asked to make is legislative rather than adjudicative in character.... And notice and opportunity for a hearing are not constitutionally required safeguards of legislative action. *Bi–Metallic Investment Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); *Association of Nat'l Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1165–66 (D.C. Cir.1979). The fact that a statute (or statute-like regulation) applies across the board provides a substitute safeguard. See *United States v. Florida East Coast Ry.,* 410 U.S. 224, 245–46, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973). This safeguard is built into Illinois' local-option provision, and supplies a practical reason for classifying the referendum procedure as legislative for purposes of this case.

*Philly's,* 732 F.2d at 92–93.

With the 1989 amendments to paragraph 167, state law would permit a precinct's voters to single out a specific liquor seller to shut down. Whatever safeguard is present when voters may only act to prohibit liquor sales precinct-wide is now missing. As such, amended paragraph 167 represents a violation of Liquor Mart's due process rights, and we hold it unconstitutional.

Defendants cite to an Illinois appellate court decision upholding the right of precinct voters to revoke the liquor license of the only licensee in the precinct. *Ole, Ole, Inc. v. Kozubowski,* 187 Ill.App.3d 277, 134 Ill.Dec. 895, 898, 543 N.E.2d 178, 181 (1st Dist.1989). They claim that "[t]here is no difference in fact between voting a precinct dry that contains only one liquor establishment, and voting a particular location dry." Defendants' Memorandum at 12. The legal difference, however, is that one maneuver is constitutional, and the other is unconstitutional. In *Ole, Ole,* there is, as Judge Posner noted in *Philly's,* no criterion for peering beneath the voters' decisionmaking. *Philly's,* 732 F.2d at 92. But when voters pointedly single out a particular licensee, and do not target other licensees in the same precinct, the risk is no more and no less than that they are "gang[ing] up to drive out of business a seller of liquor whom they disliked for reasons unrelated to any plausible public interest." *Id.* This is precisely the kind of capricious action that the due process of law provisions in the Constitution are designed to prevent. *Id.*

## II. Conclusion

We grant Liquor Mart a permanent injunction prohibiting the Election Board from submitting to voters any proposition for a targeted local-option referendum based upon the amended provisions of Ill. Ann.Stat. ch. 43, para. 167. Any such proposition must be withheld or deleted from materials given to voters at the impending November 6, 1990 election. We further award Liquor Mart reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 (1988). It is so ordered.